(No. 84-CC-066█

CITY OF QUINCY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed August 13, 1984.*

DONALD D. ADAMS, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM WEBBER, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

The City of Quincy brought this claim seeking the sum of $35,831.00 in payment for fire protection provided the Respondent's Illinois Veterans Home located in Quincy, Illinois. The Claimant alleged that it demanded payment from the Respondent but its demand was refused on the grounds that the appropriation with which it could have been paid had lapsed or, in the alternative, on the grounds that there were insufficient funds appropriated for the payments.

It appears from the departmental report compiled by the Respondent's Department of Veterans' Affairs, which report is *prima facie* evidence of the facts contained therein pursuant to Rule 14 of the Rules of the Court of Claims, that amidst massive cost reduction measures taken by the Respondent with respect to the operation of the Veterans Home, it was decided that the City of Quincy's fire protection bill would not be paid. The Department of Veterans' Affairs described the situation as follows:

"During December, 1982, the staff of the Illinois Veterans Home, at Quincy, prepared an updated projection of expenditures through FY83. This projection indicated that, if the then current operational level was to be maintained, it was probable that overspending of the appropriated amount by approximately $500,000 would occur.

The Department implemented various cost curtailment measures wherever possible, to assure spending within the limits of the approved

appropriation. Significant reductions were made in staffing levels with lay-offs and the freezing of vacant positions. Participation of employees in the voluntary furlough program was encouraged. All future equipment acquisition was frozen, various service contracts were cancelled, commodity inventories were reduced and new purchases were deferred.

About this time, it also became apparent that the Illinois Veterans Home Fund was experiencing a serious cash-flow problem, as generated income was not keeping pace with expenditures. The Illinois Veterans Home Fund is funded from revenue generated at the Home through partial reimbursement of costs by the Veterans Administration and Medicare. A maintenance charge is also collected from the members of the Home, which is based on their monthly income. The Illinois Veterans Home Fund has in recent years supported approximately 60% of the operating costs of the Home.

This tight money situation was further adversely affected in March, 1983, when the Governor's freeze on new admissions was put into effect. This freeze on new admissions, while intended to reduce operating costs, also placed a freeze on new income. As members died or moved out of the Home, income also was reduced.

A situation developed in which everyone involved was engaged in efforts intended to reduce expenditures and maximize the generation of income, while maintaining a level of operation which would provide adequate care and service for the approximately 600 members of the Home. In spite of efforts to reduce the cost of contractual services it was found that, in particular, the high cost of providing hospital and medical care for the members of the Home was continuing to increase at a drastic rate as the fiscal year was drawing to a close. Adding to the difficulty was the fact that the extent of Medicare participation in payment is never known with certainty until after a lag of several weeks.

Although adequate income was generated and cash was allocated to permit payment of all anticipated expenditures, and total expenditures were curtailed to within the limits of the total appropriation, the Department found that the appropriation by line item was greatly dislocated from where the costs were being incurred.

The remaining amount of transferability under the 2% transfer statute was necessarily utilized to permit payment of the final FY83 payrolls at the Home.

The Department sought the aid of the General Assembly in obtaining an amendment to our FY83 Appropriation to make the necessary transfer. Unfortunately, it was too late in the legislative session, and the Department was unsuccessful in this effort.

As a result, while the Department was lapsing approximately $162,000.00 in the Commodities line item, it was unable to transfer those funds to satisfy the additional needs in the Contractual Services line item."

Ordinarily in circumstances such as this, this Court must deny this claim, as this Court is not permitted

under the Constitution of the State of Illinois, 1970, article 8, section 2, or section 30 of the State Finance Act (Ill. Rev. Stat., ch. 127, par. 166), to award funds in excess of those the legislature has appropriated. However, the complaint and the departmental report, which pursuant to Rule 14 of the Rules of the Court of Claims is *prima facie* evidence of the facts stated therein, both state that the Claimant is requesting payment for fire protection rendered to the Illinois Veterans Home in Quincy, Illinois. Clearly, this is a service which is indispensable for those institutionalized at the home, and it is a service which cannot be purchased from any other source. There is an exception for payment of services in excess of the appropriated amount where those services are expressly authorized by law. The State submits that the operation and maintenance of the Illinois Veterans Home is mandated by section 2.01 of "An Act creating the Illinois Department of Veterans' Affairs" (Ill. Rev. Stat., ch. 126½, par. 67.01), and that fire protection services are part of the operation of that home, and that these services are expressly authorized by law. This interpretation is consistent with the holding in *Fergus v. Brady*, 227 Ill. 272.

It is hereby ordered, that the Claimant be awarded $35,831.00.